UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| MICHAEL CARMIE ANTONELLI, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 6: 07-236-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WARDEN GRONDOLSKI and | ) | |
| CHAIRMAN OF THE UNITED STATES | ) | **MEMORANDUM OPINION** |
| PAROLE COMMISSION, | ) | **AND ORDER** |
| | ) | |
| Respondents. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Petitioner Michael Carmie Antonelli's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Antonelli is currently confined in the Federal Correctional Institute in Manchester, Kentucky.  He filed this habeas petition on July 11, 2007, asserting that the United States Parole Commission ("USPC" or "Commission") has failed to present him with a Notice of Action letter in a timely manner and that the Bureau of Prisons ("BOP") has improperly denied him time in a Community Corrections Center ("CCC")[2] for the last portion of his sentence.  Because the USPC's decision to deny re-parole

---

[1]  As Antonelli is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys.  *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).

[2]  CCC's are also known as "halfway houses" or more recently, "Residential Reentry Centers" ("RRC"s).

to Antonelli has a rational basis and because Antonelli has failed to administratively exhaust his claim concerning his request for time in a CCC, his petition will be denied.

## I. BACKGROUND

The alleged factual basis for Antonelli's claims was summarized by this Court in its August 21, 2007, Memorandum Opinion and Order as follows:

> Antonelli is serving a 22-year sentence pursuant to his conviction in the United States District Court for the Northern District of Illinois. He contends that he has served 5 years and 9 months of his sentence with "no outdate," but that,
>
>> I seen [sic] the Parole Examiner on May 21, 2007, and was verbally given an outdate of October 11, 2007, but the examiner stated that I would receive a NOTICE OF ACTIONS within 21 days. It has been nearly 50 days and no NOTICE OF ACTION has been issued, in stark violation of the PAROLE COMMISSION RULES.
>
> [Record No. 2 at 3, dated July 10, 2007]  Antonelli contends that the Commission's failure to timely present him with the Notice of Action has denied him due process because it impairs his ability to appeal the outdate set by the USPC, violates the Commission's own rules, and deprives him of his opportunity to be placed in a CCC for as long as possible. Further, he contends that the failure to present him with a timely Notice of Action amounts to "arbitrary, capricious, unfair and unjust" action.
>
> Antonelli also claims that the BOP has caused him to lose a 6-month CCC placement because staff at the USP-Big Sandy were allegedly derelict in their duties. He asserts that the staff "knew or should have known that I am entitled to halfway house [for 6 months] and have failed to perform their duties owed me by policy." . . . .
>
> [Additionally,] Antonelli has . . . claimed that the BOP acted arbitrarily and unfairly with regard to the 6-month CCC placement. One exhibit reveals that just one week after being given the October 11, 2007, outdate verbally, Antonelli wrote to his counselor asking, "put me in for as much halfway house as you can." [Attachment dated May 28, 2007] He alleges that the BOP arbitrarily decided to transfer him to another facility in which he would have no CCC placement at all.

> . . .
> Antonelli's last exhibit is a copy of a "program review report," on which someone (presumably, a BOP staff member) has written as follows:
>
> > As of review date, no release date. Antonelli indicates he met with the parole board on 5-21-07 and received a release date of 10-11-07. Unit team has no Notice of Action, Records Office has no additional paperwork. Will follow-up with Parole Commission.

Record No. 5 (quoting Final Exhibit to Petition, dated July 9, 2007) (footnote omitted). In that order, the Court instructed the Clerk of the Court to serve Antonelli's petition on the named Respondents.

The Warden and the USPC have responded to Antonelli's allegations and contend that the facts are materially different from those presented by the Petitioner. In support, the Respondents have submitted declarations and records from the BOP and the Commission.[3] [Record Nos. 10, 12] The supporting documents reveal that the full-term expiration date of Antonelli's sentence is January 29, 2010. In contrast to the Petitioner's allegation that he was denied a CCC/RRC placement because the BOP failed in its duties or acted arbitrarily, the Respondents point to an August 3, 2006, progress note that explains that Antonelli did not receive a CCC placement because the Commission placed a pending detainer on him based on a parole violation warrant. Inmates with detainers, including the Petitioner, are ordinarily barred from enjoying CCC placements under the BOP's Program Statement 7310.04, entitled

---

[3] The Court has ordered these documents kept under seal. *See* Record Nos. 12-13.

*Community Corrections Center (CCC) Utilization and Transfer Procedure*, at Section 10(f)[4], a copy of which the Respondents provide.

The Respondents also make clear that Antonelli's May 21, 2007, hearing with the USPC was a parole *revocation* hearing. The documents show that at the conclusion of the hearing, the examiner wrote three recommendations. He recommended that the Petitioner's parole be revoked, that he not be credited with time spent on parole, and that he be re-paroled on December 11, 2007, rather than October 11, 2007, as alleged by Antonelli. The USPC Declarant asserts that the Commission has never confirmed an October date and that all of the exhibits clearly show that the recommendation was December 11, 2007.

The records supplied by the Respondents reveal that it was the Commission's executive reviewer who disagreed with the recommended re-parole, and the USPC ultimately agreed with the reviewer. The Commission denied re-parole and directed that Petitioner serve out the remainder of his sentence for reasons stated in its Notice of Action, dated June 12, 2007. The Respondents point out that the date of the Notice of Action is 22 days after the hearing, only one day past the 21-day time-frame set out in the regulations. *See* 18 U.S.C. § 4206(b); 28 C.F.R. § 2.74(a). However, according to the Respondents, even if the Notice of Action was not received until July 11, 2007 (as the Petitioner claimed to the Commission), Antonelli cannot show that he was prejudiced by the delay. The Respondents contend that the exhibits show that Antonelli was able to file a timely appeal of the USPC decision on July 22, 2007. That appeal is still

---

[4] The Respondents have provided a copy of this Program Statement with their response. [*See* Record No. 10, 12]

pending, as Antonelli's representative has asked for additional time to make a supplementary submission, and the Appeals Board is waiting for this submission before reviewing his appeal.

With respect to the CCC placement, the Respondents claim that, under its operating policy and consistent with the underlying reasons, the Petitioner is not eligible for a CCC placement because of the detainer. Further, he will not be considered for CCC placement until the USPC takes action on the detainer. The Respondents assert that Antonelli has not been prejudiced by the BOP's refusal to refer him to a CCC, as prisoners have no constitutional right to placement in a halfway house or any other type facility.[5] Therefore, Respondents request that Antonelli's petition be denied and dismissed.

With the Court's permission, the Petitioner has filed a Reply, in which he continues to argue the facts. He insists that the re-parole date which the hearing examiner promised him was October 11, 2007, and the tape recording of this pronouncement at the May 21, 2007, hearing would reveal that he is correct about the date. Antonelli also denies that he has a parole violation warrant lodged against him and has attached a copy of the 2001 warrant which is dated as executed and signed by Petitioner on January 26, 2001. He states that he is no longer serving the bank robbery sentence but is now serving the sentence imposed for the parole violation, and that sentence computes to an outdate of January 29, 2010.

With respect to the Parole Commission's denial of re-parole, the Petitioner continues to claim that the reasons given in the Commission's notice of action are not supported by the record. For instance, he claims he did not admit to committing murder or engaging in a group

---

[5] The Court notes that 18 U.S.C. § 3624(c) does provide a right to pre-release preparation, but this section does not yet apply to Antonelli.

demonstration, as indicated in the hearing examiner's documents. Rather, he declares that he only admitted to having been convicted of these charges.

Antonelli also challenges the legal authority of the Commission in making its decision. He claims that denying him "parole was not a permissible action under Section 2.24(b)(2) of the parole rules cited in the C.F.R. He may only amend any recommendation of a hearing examiner . . . to a date not to exceed six months from the date recommended by the examiner." [Record No. 16 at 1] Antonelli also cites Section 2.24-03 in support of his position.

Regarding the CCC placement to which he claims he is entitled, Antonelli contends that the re-parole date should be April 11, 2008, at the latest. He further asserts that, because he would be entitled to CCC placement six months before that date, he should be entitled to the CCC placement on October 11, 2007. Therefore, Antonelli argues that he is entitled to either release on re-parole on October 11, 2007, consistent with the examiner's announcement, or placement in a CCC on October 11, 2007, for his 6-month stay prior to an April 11, 2008, release on re-parole.

**II.    DISCUSSION**

In relying on a program review report more than a year old, the Respondents appear to be behind on the facts and applicable law regarding the detainer. However, despite this inaccuracy on the part of the Respondents, Antonelli has also misconstrued the significance of the facts and the applicable law. Simply put, he is not entitled to either release on re-parole or placement in a CCC on October 11, 2007.

Regardless of what date the hearing examiner announced for Antonelli's re-parole, the pertinent fact – and the pertinent law – is that the hearing examiner does not make the parole decision. He makes recommendations, and the Commission makes the decision. In this case, the Commission agreed with the hearing examiner as to his first two recommendations, but disagreed with regard to the recommendation for re-parole. Instead, the Commission adopted the recommendation of the executive reviewer who recommended that Antonelli be denied re-parole. Further, the Commission made its decision on June 12, 2007, within the time allotted under 18 U.S.C. § 4206(b) and 28 C.F.R. § 2.74(a).

Similarly, with regard to the reasons for the Commission's decision, the disputed facts asserted by Antonelli do not control the result. Rather, the Commission wrote as follows:

> After review of all relevant factors and information, a decision above the guidelines is warranted because you are a poorer parole risk than indicated by your Salient Factor Score in that this is your sixth revocation of parole on this term. The current violation behavior includes a new conviction for bank robbery and is at least the fifth time you have been convicted of a new crime since your initial release to parole supervision. Your proven inability to complete prior periods of supervision without committing new crimes makes you more likely to engage in additional criminal behavior when released again and the Commission does not believe that you are a suitable candidate to again release on parole on the original federal sentence.

[Record No. 12, Notice of Action dated June 12, 2007] Antonelli is also incorrect as to the scope of the Commission's authority, as the Commission's action is not limited to a 6-month amendment of a decision made by a hearing examiner.

Nor is it within the authority of this Court to substitute its judgment for that of the USPC. In *Persico v. Gluch*, 948 F.2d 1289 (6th Cir. 1991) (unpublished), the Sixth Circuit summarized

the role of the federal court in reviewing a petition for habeas corpus complaining of a decision

by the Commission as follows:

> Our review of Parole Commission decisions is extremely limited. This court has held that "the Parole Commission's substantive decision to grant or deny parole is an action 'committed to agency discretion' under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2)." *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir. 1984). "'[T]he inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.'" *Hackett v. United States Parole Comm'n*, 851 F.2d 127, 130 (6th Cir. 1987) (quoting *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir. 1982)).

*Id.* at *1. Further, the Commission's statement of reasons for denying parole need not be embellished by detailed findings of fact. *Id.* at *2 (citing *United States ex rel. Scott v. Illinois Parole and Pardon Bd.,* 669 F.2d 1185, 1190 (7th Cir.), *cert. denied,* 459 U.S. 1048 (1982)).

Although it appears that Antonelli's appeal of the USPC's decision is still pending,[6] it is not necessary for this Court to await that result, particularly when the Petitioner's actions have occasioned the latest delay. Accordingly, in applying the highly discretionary standard of review afforded to the USPC's decisions, the Court finds that the USPC's June 12, 2007, decision denying re-parole to Antonelli has a rational basis in the record. Therefore, this claim will be denied, with prejudice.

With regard to Antonelli's claim of entitlement to CCC placement, he contends that, "[e]very federal prisoner is entitled to 6 mos halway [sic] house placement or 10% of the time

---

[6] A petitioner may ordinarily bring a habeas corpus proceeding only after he has availed himself of the available administrative procedures for review of that decision. *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981) (per curiam); *see Talerico v. Warden, U.S. Penitentiary*, 391 F. Supp. 193 (M.D. Pa. 1975). The administrative remedy available to a parolee or prisoner who wants to appeal a decision regarding his parole is contained in 28 C.F.R. § 2.26. The Petitioner herein alleged that time was of the essence and that the Commission was purposefully delaying a decision such that he could not timely appeal, so as to avoid the Court's requiring him to exhaust in this case.

served." However, he cites no authority for this alleged entitlement. The Respondents and the Court construe this assertion to refer to 18 U.S.C. § 3624(c), which provides,

> [t]he Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends *a reasonable part, not to exceed six months, of the last 10 per centum of the term* to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's reentry into the community. . . .

18 U.S.C. § 3624(c) (emphasis added). This statutory section is entitled "pre-release custody," and governs the preparation of prisoners for return to society.

Antonelli has a scheduled release date which is currently three years away, and he has produced no record that he has exhausted this claim through the BOP administrative system. *See Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981) (per curiam) (exhaustion judicially required for Section 2241 proceedings). Until he is closer to being released, has a pre-release plan, and has exhausted a claim concerning the application or non-application of 18 U.S.C. § 3624(c) to him, he has no entitlement to time in a CCC or anywhere else, as the location for service of any federal sentence is left totally to the BOP's discretion. *See* 18 U.S.C. § 3621 (b); *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). Therefore, this claim is not properly before the Court and will be dismissed for Antonelli's failure to exhaust.

### III. JUDICIAL NOTICE

The Court takes this opportunity to inform Antonelli that his failure to be forthright during the pendency of this action is conduct which will not be permitted in the future. The Court notes that Antonelli received the USPC Notice of Action complained-of in this matter the

same day that the current petition was filed: July 11, 2007. Yet, he failed to advise the Court of its receipt, the contents, the pending appeal, or his role in delaying that appeal until three months had passed.

The Court further notes that in *Antonelli v. Hastings*, Pikeville No. 7: 06-283-GFVT, the Court stated that,

> [o]ver the last 15 years, Antonelli has filed approximately 100 or more federal habeas corpus petitions and civil complaints, almost all of which have been dismissed for failure to state a claim or as frivolous. Several district courts and the United States Supreme Court have imposed filing restrictions upon Antonelli, requiring him to seek permission before filing a new request for relief based upon his history of repetitive and abusive filings. *See Antonelli v. Sanders et al.*, 06-CV-117, Eastern District of Arkansas [Record No. 6, n. 5,6].
>
> The Court need not and will not wait for Antonelli to accumulate such a record as a vexatious litigant before acting to protect its jurisdiction and the integrity of the judicial process in this District. . . .

[*See* Case No. 7: 06-283-GFVT; Record No. 7 at p. 9.] The Court also noted Antonelli's repeated filings of purported habeas petitions, accompanied by the habeas filing fee of $5.00, which were actually conditions of confinement cases that should have proceeded only upon payment of the $350.00 filing fee for a civil action.

The Sixth Circuit has instructed district courts to assess the higher civil action filing fee of $350.00 if a prisoner attempts to "cloak" a civil action in § 2254 or § 2255 language, and pay only the $5.00 habeas filing fee. *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997). Although the appellate court chose not to address the applicability of its holding to § 2241 petitions, the case reveals a clear intent not to permit prisoners to manipulate the judicial system. Accordingly, in Antonelli's 2006 case in this district, the Court concluded as follows:

> In the future, should Antonelli file any action, whether asserted as a habeas corpus petition or otherwise, which asserts a conditions-of-confinement claim properly cognizable only under the civil rights statute, the Court will recharacterize the action accordingly. Antonelli will be assessed the $350 filing fee and will be subject to the exhaustion requirements of the PLRA [Prisoner Litigation Reform Act of 1995].

[*See* Case No. 7: 06-283-GFVT; Record No. 7 at p. 9.]

In the current case, Antonelli again paid a $5.00 habeas filing fee and filed a purported § 2241 petition. Additionally, he alleged that he is challenging the execution of his sentence as being in violation of federal law. However, he also alleged that the BOP was negligent with regard to his CCC placement and he attached a copy of the Federal Tort Claims Act ("FTCA") claim form which he signed asserting this claim on July 3, 2007. An FTCA case is a civil action which requires payment of a $350.00 filing fee. Antonellli has not mentioned the FTCA claim since his original submissions. His silence suggests that he has wisely dropped the tort claim from this action.

Accordingly, the Court will not address the negligence claim, nor charge Antonelli the $350.00 filing fee, nor impose sanctions on him at this time. However, he is advised that his filings will continue to come under scrutiny because of his past conduct. Further, he is again advised that the Court possesses the inherent authority to impose sanctions against those who abuse the judicial system and the Court will not hesitate to use this power should Antonelli's future conduct invite it. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *In re Prevot*, 59 F.3d 556, 563-64 (6th Cir. 1995).

### IV. CONCLUSION

For the reasons discussed above, it is **ORDERED** as follows:

(1)     The claims asserted by Petitioner Michael Carmie Antonelli in this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Record No.2] are **DENIED.**

(2)     This action is **DISMISSED** and **STRICKEN** from the Court's active docket. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondents.

This 30th day of October, 2007.

Signed By:
*Danny C. Reeves*   DCR
United States District Judge